# WHEELING.

NORRIS VS. BEATY ET ALS.

S. HENRY NORRIS, PLAINTIFF IN THE ACTION, DE-
FENDANT IN ERROR *against* CORNELIUS BAKER,
FELIX BEATY AND AUSTIN BEATY, DEFENDANTS
IN THE ACTION, PLAINTIFFS IN ERROR.

|  |  |
|---|---|
| 6 | 477 |
| 41 | 201 |
| 6 | 477 |
| 47 | 147 |

Decided July 17th, 1873.

## SYLLABUS.

After a controversy has arisen between the parties, and a *fortiori* at
the time of the trial, it is too late for a creditor to claim a right to
make an appropriation of a credit or payment to any particular
debt.

2. When no appropriation has been made by either debtor or creditor
of a payment, the court will apply the same according to the
principles of justice and equity in the particular case.

The case is stated in the opinion of the Court.

*Fleming* for Appellants.

*Clark* for Appellee.

1873.
June Term.

Norris
v.
Beaty et als.

PAULL, Judge.

In the year 1868, the Plaintiff, S. Henry Norris, sold, and by deed, dated on the 7th day of September in that year, conveyed to Cornelius Baker, one of the Defendants, a certain tract of land lying in Wetzel county, for the consideration of four thousand four hundred and twenty-five dollars. For this amount the said Cornelius Baker made and delivered to said Norris his six promissory notes as follows, to-wit: three for $500 each, with Jeremiah Beaty, John Snodgrass and Felix Beaty as his sureties; two for $1,000 each, and one for $925; the first three of said notes were payable respectively on the 1st day of April 1869, 1st day of October 1869 and 1st day of April 1870; and the last three on the 1st day of April 1871, 1st day of April 1872 and 1st day of April 1873—all bearing date on the 7th day of September 1868.

By deed, dated on the 23rd day of September 1868, the said Cornelius Beaty conveyed the aforesaid tract of land to George E. Boyd, in trust to secure the payment of the foregoing specified promissory notes so made by the said Beaty to said Plaintiff. The first two of said promissory notes were paid, and when the third one for $500 became due, the Plaintiff instituted suit thereon, and recovered judgment in the Circuit Court of Wetzel county against Cornelius Baker and Felix Beaty, and upon execution being issued, the said Felix Beaty and Austin Beaty gave their undertaking according to law. On this undertaking a motion was made for judgment in the Circuit Court on the 15th day of November 1871, and on the 17th, the Defendant filed a plea of payment with specifications, by which the said Felix Beaty claimed that the sum of $1,009.75, the net amount realized from the sale of said tract of land under the deed of trust aforesaid, should be applied (so far as necessary) to discharge the said claim or debt of the Plaintiff, named in said undertaking, and for which he was the surety on the $500 note on which judgment was obtained.

1873.
June Term.

Norris
v.
Beaty et als.

In July 1871, the trustee sold said land at the instance of the creditor, and paid over to his attorney the net proceeds of sale, to-wit: the sum of $1,009.75, during the same month. About four months after this money was received by the Plaintiff's attorney, and after the motion was made for judgment on the undertaking aforesaid, said attorney, without the knowledge or consent of said Cornelius Beaty or his sureties, applied said sum of money as a credit upon the note of said C. Beaty for $1,000 due April 1st, 1871. A case agreed, including the foregoing facts, (with some others not material to mention) was submitted to the Court, with leave "to decide, determine and give judgment in the above named cause upon the issue joined on the facts, as agreed above, according to law." On the 20th of July 1872, the Court rendered judgment against the Defendants in the undertaking for the whole amount of the debt or claim for which it was given and from this judgment an appeal has been taken to this Court.

The sole question arising for settlement upon this record, is the proper application of the sum of $1,009.75, the net proceeds of sale of the land conveyed by the deed of trust. The Plaintiff, Norris, claims that the same was properly made by his attorney to the $1,000 note falling due on the 1st of April 1871 ; while on the other hand, the defendant Felix Beaty claims that that money should have been applied to the $500 note on which he was surety, and which fell due on the 1st of April 1870, one year previous to the maturity of the note on which it was applied.

It was conceded by the counsel on both sides, in their arguments, that the debtor himself has the right in the first instance, and this is unquestionably the law, to indicate how, or to what debts or notes or claims due from himself to the Plaintiff, the payments shall be applied. If the debtor fails to exercise this right, the application of the credit is then determined by other rules and principles.

Has the debtor, Cornelius Beaty, done so in the present case? Not unless he did it by the language employed in the deed of trust, under the execution of which, and by the sale of the trust property, this money was realized. The maker of that deed has said that the land therein described was conveyed "in trust to secure the plaintiff Norris, the *true and punctual payment* of the six several promissory notes," hereinbefore specified. It is claimed that this language is a direction by the debtor as to the mode in which the money, arising from the sale of the trust property, shall be applied; and this Court is now required to construe these words as they are employed in this deed. The word *true*, in this connection, means *faithful*, and the meaning of the word *punctual* is *exact*, and, as applied to payment, means the exact time at which the payment is to be made. The language paraphrased, would be, "in order to secure the faithful payment of said promissory notes at the exact time of their maturity respectively." But it may be well said perhaps, that when these words are wanting in a deed, they are nevertheless implied; for the law always supposes that an individual intends to be faithful and punctual in his promises or pecuniary engagements. But after a failure has occurred in the payment of these notes, and some or all of them have become due, I am not prepared to give to these words the force and effect of an express direction on the part of the debtor, the maker of the deed, as to how the money arising from the trust sale shall be applied; as, for the reason stated, these words are virtually implied in every deed of the kind, though not found in it. Nor am I prepared to say that the 6th sec. of Chap. 72 of the Code controls the distribution of the trust fund, where, as in the present case, there seems to be but one debt due from the debtor, and secured by the deed, the same debt being simply payable in successive instalments.

If then, the debtor indicated no application of the money arising from their trust sale, has the creditor, who,

a general rule then has the privilege of doing so, made a valid application of this money. According to the agreed case in the record, this money, to wit: the sum of $1.009.75, was paid into the hands of the creditor by the trustee, or rather into the hands of his attorney, where it remained unappropriated for about four months, and was then, on the 16th day of November 1871, applied as a payment to .the $1.000 note which fell due on the 1st day of April 1871, without the knowledge or consent of the principal debtor or his sureties. In the mean time notice had been given for judgment on the undertaking, to which Felix Baker, one of the sureties, was a party, and on the 15th of that month, November 1871, proceedings were taken on that notice in the Circuit Court, the Defendants appearing on that day, and resisting the motion; it would seem that a controversy had probably arisen between the surety and the creditor as to the proper application of this money, and on the 17th day of November 1871, a plea of payment was filed, with specifications, claiming the application of this money, (so far as was necessary) to the discharge of the note or debt on which Felix Beaty, one of the Defendants, was surety. The payment of this money as a credit on the $1.000 note four months after it was received, was made after the proceedings on the case or motion had commenced, in which an interested party, who was then being pursued by the creditor, who contesting the proper application of that fund, and about which we may possibly .infer, from the circumstances set forth in the record, a controversy previously existed between these parties. Under this condition of the facts, I think the claim of the creditor to have made a final and conclusive application of this money, to the prejudice of the surety, cannot be maintained. That a surety has the right to contest the application of this fund cannot be doubted, and if done in time must arrest the privilege claimed by the creditor, who cannot exercise it after a controversy has arisen.

In the case of the United States *vs.* Kirkpatrick 9 Wheaton 720. Story J. says; "The general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments, if he omits it, the creditor may make it, if both omit it, the law will apply the payments according to its own notions of justice. It is certainly too late for either party to claim a right to make an appropriation, after the controversy has arisen, and *a fortiori* at the time of the trial." See also Gass *vs.* Stinson 3 Sum. 98, and Millipen *vs.* Tuffts 31 Maine 497. If then no sufficient or valid application of this money has been made by either the debtor or creditor, what rule shall be observed by the Court, on which the duty now devolves of making the application? In the case just cited from 9 Whaeton, the Court says; "The law will apply the payments according to its own notions of justice." And in the case of the United States *vs.* Wardwell 5 Mason 82. "If neither party makes the application, the law will adjust it, by its own notions of the equity and justice of the particular case." And this rule or position taken by the Supreme Court of the United States, was expressly adopted by the Supreme Court of Virginia in the case of Smith *vs.* Loyd 11 Leigh 512. Judge Allen observing "that this position upon the whole is the best."

What then do the principles of equity and practice in the case now under consideration seem to require, as to the proper application of the proceeds of sale of this trust property? Our doctrines upon this subject seem to have been extensively derived from the provisions of the civil law, in which the absence of any application by either debtor or creditor, applied the payment, as was conceived under the particular circumstances of the case, to be most beneficial to the debtor, or at least to the debts which lie heaviest upon him, and which it concerns him most to discharge; hence, it is said, that law "applied a payment to the discharge of a debt for which a surety is bound, rather than acquit what the debtor is

singly bound for without giving any security; it is also applied to a debt for which the debtor has given pawns and mortgages, rather than to a debt by a simple bond or promise." I am aware that this rule has not been uniformly adhered to, either by the English or American courts, but that there is diversity of decisions, as indicated by the authorities cited by the counsel in the present case. In some cases, the payments have been applied to the debts in the order of their priority, but here again there is no uniformity. The case of Field, *et al, vs.* Holland, *et al*, 6 Cranch, 8, is cited by the Appellee, as showing that the court should apply the payment to the debt deemed most precarious, and this is for the benefit of the creditor. But this case does not harmonize exactly with a later case, to-wit: the case of the United States *vs.* Kirkpatrick in 9 Wheaton, hereinbefore cited, where payments were made to extinguish debts according to priority of time. Such appears also to have been the rule adopted in the case of the Bank of the United States *vs.* Covert, in 13 Ohio, 240.

Besides this suggestion of the civil law, and the authorities of the common law, which seem to accord with it, in favor of the surety, there are some equities also in this case, which should not be overlooked.

The deed and deed of trust were presented for record on the same day, and the deed of trust operated not only as a security for the creditor, but an indemnity for the surety, who might have supposed that the deed thus providing for the true and punctual payment of these notes, had provided for the same in the order of their priority, and that thereby he was secured against the liability which he had incurred. And further, the creditor sold and conveyed this land in September 1868, for the sum of $4,425, and in July 1871, in less than three years afterwards, buys the same again at a sale made for his own benefit, at the price or sum of $1,050, being less than three-fourths of the amount for which it was originally sold; he has received from the purchaser $1,000, and

holds still his promissory notes for $2,000 more in addition to the land itself. These facts present strong, just and equitable considerations in favor of the surety in this controversy. And this money being applied to the note (so far as necessary) for which he was bound, will be in accordance with the rule of the civil law, and in accordance with the rule adopted in the Supreme Court of the United States, in the case heretofore cited from 9 Wheaton, 720, and Smith *vs.* Loyd, 11 Leigh, 512, where the payments to extinguish the debts were made according to priority of time.

The counsel for the Appellee has relied, for the adoption of a different rule, and one operating to the prejudice of the surety, upon the case of Vance *vs.* Monroe 4 Gratt. 52, where the payment was applied to bonds of the debtor, falling due subsequently to the one, on which there was a judgment, on a forthcoming bond, the surety in which bond asked for relief. The surety in this case was not bound for the original debt, and there were no special equities in his favor, and he was left to the legal effect of the liability which he had incurred by virtue of his bond. I do not hold this case as sufficient to overrule the position I have assumed for the settlement of the present case ; and if it is regarded as in any way in conflict with it, the case itself is overruled by one yet later: Ross's Ex'or *vs* McLauchlan Adm'r and others, 7 Gratt., 86, where it was decided as follows ; "A debtor by four bonds, payable at successive periods makes payment to his creditor, which upon a settlement after the death of the debtor, are ascertained to amount to more than is sufficient to discharge the first bond. The creditor will not be permitted to apply the amount remaining after discharging the first bond, as a credit upon the fourth ; but the court will apply it to the second bond, in relief of a party bound as surety for the amount of the second bond."

Under these authorities, and with these views of the justice and equity of the case, the judgment of the Cir-

cuit Court, rendered on the 20th July 1872, on the motion on the undertaking, must be reversed, and the Appellants recover their costs about their suit in this Court expended; and this Court proceeding to render such judgment as the Court below should have rendered, gives judgment for the Defendants in said motion, and that they recover against the Appellee their costs about their defence in the Circuit Court expended.

MOORE and PAULL, Judges, concur in the foregoing opinion.